AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

FILED

# UNITED STATES DISTRICT COURT
for the

Jeffrey Ihm
_____
            *Petitioner*

v.

Samantha Serrano
_____
            *Respondent*
*(name of warden or authorized person having custody of petitioner)*

2023 JAN 25 AM II: 30

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

Case No. 2:23-cv-00061-JES-NPM
*(Supplied by Clerk of Court)*

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1.  (a) Your full name: Jeffrey Ihm
    (b) Other names you have used: _____
2.  Place of confinement:
    (a) Name of institution: Federal Prison Camp - Miami
    (b) Address: 15801 S.W. 137th Avenue
        Miami, FL 33177
    (c) Your identification number: 61922-018
3.  Are you currently being held on orders by:
    ☒ Federal authorities        ☐ State authorities        ☐ Other - explain:

4.  Are you currently:

    ☐ A pretrial detainee (waiting for trial on criminal charges)
    ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
    If you are currently serving a sentence, provide:
    (a) Name and location of court that sentenced you: United States District Court
    Middle District of Florida, Fort Myers Division
    (b) Docket number of criminal case: Case No. 2:15-cr-3-FtM-29CM
    (c) Date of sentencing: January 30, 2017
    ☐ Being held on an immigration charge
    ☐ Other *(explain):* _____
    _____
    _____
    _____

### Decision or Action You Are Challenging

5.  What are you challenging in this petition:

    ☒ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☐ Other *(explain)*: _____

6.    Provide more information about the decision or action you are challenging:

    (a) Name and location of the agency or court: **Federal Bureau of Prisons**

    (b) Docket number, case number, or opinion number: _____

    (c) Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:
**Immediate calculation of Earned Time Credits for Evidenc Based Recidivism Reduction training and Productive Activities and to immediately apply the Earned Time Credits in accordance with the First step Act of 2018.**

    (d) Date of the decision or action: **September 28, 2022**

## Your Earlier Challenges of the Decision or Action

7.    **First appeal**

    Did you appeal the decision, file a grievance, or seek an administrative remedy?

    ☒ Yes        ☐ No

    (a) If "Yes," provide:

        (1) Name of the authority, agency, or court: **Federal Correctional Institution - Miami, Warden S. Serrano. BP-9**

        (2) Date of filing: **October 14, 2022**

        (3) Docket number, case number, or opinion number: **1136692-F1, F2**

        (4) Result: **Denied**

        (5) Date of result: **10-19-2022 signed by Warden Serrano**

        (6) Issues raised: **Requested the BOP to calculate and apply Earned Time Credits under the First Step Act of 2018, 18 U.S.C. § 3632(d)(4)(C) and 18 U.S.C. § 3624(g). Denied for 3 reasons: one, ineligible for the FSA due to your current detainer; two, under the CARES Act you are not eligible for Home Confinement; and three, your eligibility or ineligibility is not determined at the institution level, it is decided at the National level where your case is reviewed by specialized staff.**

    (b) If you answered "No," explain why you did not appeal: _____

8.    **Second appeal**

    After the first appeal, did you file a second appeal to a higher authority, agency, or court?

    ☒ Yes        ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: Regional Director, Federal Bureau of Prisons, Atlanta, GA. BP-10

(2) Date of filing: October 23, 2022

(3) Docket number, case number, or opinion number: N/A

(4) Result: Did not receive an answer; did not receive extension notification

(5) Date of result: December 29, 2022

(6) Issues raised: Same as the Appeal to the Warden

Thirty days for Response Time; 30 days if an extension is needed; and 6 days for mailing (3 days each way)

Waited 66 days. BOP Program Statement 1330.18 §542.18, if the inmate does not receive a response... absence of a respone - denial.

(b) If you answered "No," explain why you did not file a second appeal:

9. **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☒ Yes        ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: General Counsel, Federal Bureau of Prisons, Washington, D.C. BP-11

(2) Date of filing: December 29, 2022

(3) Docket number, case number, or opinion number: N/A

(4) Result: NO RESULT

(5) Date of result: —

(6) Issues raised: SAME AS APPEAL TO THE WARDEN AND REGION

(b) If you answered "No," explain why you did not file a third appeal:

10. **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes        ☒ No

If "Yes," answer the following:

(a) Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes        ☐ No

If "Yes," provide:

(1) Name of court:

(2) Case number:

(3) Date of filing:

(4) Result:

(5) Date of result:

(6) Issues raised:

_____

_____

_____

(b) Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes   ☒ No

If "Yes," provide:

(1) Name of court:

(2) Case number:

(3) Date of filing:

(4) Result:

(5) Date of result:

(6) Issues raised:

_____

_____

_____

_____

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence:

_____

_____

_____

_____

_____

_____

_____

11.   **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes   ☒ No

If "Yes," provide:

(a) Date you were taken into immigration custody:

(b) Date of the removal or reinstatement order:

(c) Did you file an appeal with the Board of Immigration Appeals?   ☐ Yes   ☐ No

If "Yes," provide:
(1) Date of filing:
(2) Case number:
(3) Result:
(4) Date of result:
(5) Issues raised:
_____
_____
_____
_____

(d)    Did you appeal the decision to the United States Court of Appeals?
☐ Yes    ☒ No
If "Yes," provide:
(1) Name of court:
(2) Date of filing:
(3) Case number:
(4) Result:
(5) Date of result:
(6) Issues raised:
_____
_____
_____
_____

12.    **Other appeals**
Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?
☐ Yes    ☒ No
If "Yes," provide:
(a) Kind of petition, motion, or application:
(b) Name of the authority, agency, or court:
(c) Date of filing:
(d) Docket number, case number, or opinion number:
(e) Result:
(f) Date of result:
(g) Issues raised:
_____
_____
_____
_____

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Grounds for Your Challenge in This Petition

13.  State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.  Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** The Federal Bureau of Prisons is not calculating and executing the Petitioners sentence as it pertains to the First Step Act of 2018.

(a) Supporting facts (Be brief.  Do not cite cases or law.):

Under the First Step Act 18 U.S.C. § 3632(d)(4)(C) and 18 U.S.C. § 3624(g), the BOP SHALL apply Earned Time Credits to inmates who successfully participate in EBRR's and PA's. The Director BOP SHALL transfer eligible prisoners into prerelease custody or supervised release. The BOP refuse due to a State Detainer lodged against Petitioner. There is NO statutory provision in FSA that allows this.

(b) Did you present Ground One in all appeals that were available to you?

☒ Yes            ☐ No

**GROUND TWO:** _____

_____

_____

(a) Supporting facts (Be brief.  Do not cite cases or law.):

_____

_____

_____

_____

(b) Did you present Ground Two in all appeals that were available to you?

☐ Yes            ☐ No

**GROUND THREE:** _____

_____

_____

(a) Supporting facts (Be brief.  Do not cite cases or law.):

_____

_____

_____

_____

(b) Did you present Ground Three in all appeals that were available to you?

☐ Yes            ☐ No

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:**

_____

_____

_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____

_____

_____

_____

(b)  Did you present Ground Four in all appeals that were available to you?

☐ Yes          ☐ No

14.    If there are any grounds that you did not present in all appeals that were available to you, explain why you did not:

_____

_____

_____

### Request for Relief

15.  State exactly what you want the court to do:   Order respondent to immediately calculate Petitioners Earned Time Credits and Apply them to his sentence, moving the end of Petitioners sentence to December 31, 2022, and for immediate placement into Home Confinement, and to notify the detaining agency of his immediate pending release.

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

January 13, 2023

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date:  January 13, 2023

_____
*Signature of Petitioner*

_____
*Signature of Attorney or other authorized person, if any*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JEFFREY IHM
Petitioner

v.

SAMANTHA SERRANO in her official
capacity as WARDEN·FCI·MIAMI
Respondent



PETITION FOR HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241

Petitioner, Jeffrey Ihm ("Mr. Ihm" or "Petitioner"), pro-se, pursuant to 28 U.S.C. § 2241 et. seq., and Local Rule 88.2, hereby submits a petition for habeas corpus ordering res- pondent to immediately calculate Petitioner's earned "Time- Credits" for "Evidence Based Recidivism Reduction" training and "Productive Activities", and immediately apply the earned Time Credits in accordance with the "First Step Act of 2018", 18 U.S.C. § 3632(d)(4)(A) and (c) and § 3624(g) for re- duction in his sentence and immediately transfer him to home confinement, and notify detaining agency, Collier Co. Sheriff's Office of his immediate pending release, and in

1

support thereof states as follows:

The First Step Act of 2018 ("FSA") was enacted into law on December 21, 2018. The statute is aimed at helping prisoners with low risk of recidivism to reintegrate into society. Under 18 U.S.C. §3621(h)(2), the FSA directed the Bureau of Prisons ("Bureau") to calculate and apply inmates FSA Earned Time Credits ("ETC's") by January 15, 2022. Although it is one year past that deadline, the Bureau has not yet calculated Mr. Ihm's ETC's nor applied the more than 742 days (as of 1-14-2023) of ETC's that Mr. Ihm has diligently earned since the FSA was enacted on December 21, 2018.

If the Bureau and FCI-Miami had statutorily calculated and applied Mr. Ihm's ETC's, Mr. Ihm's eligibility date would have been moved to December 31, 2022, a date that is beyond the filing of this petition. see EXH. A

# I. BACKGROUND
## A. Background on Mr. Ihm

In August 2016, the Petitioner plead guilty to a nineteen-count superceding indictment charging him with fourteen counts in violation of 18 U.S.C. § 1343 and five counts in violation of 18 U.S.C. § 1028A. see EXH B The criminal case is styled United States v. Jeffrey Ihm, United States District Court,

Middle District of Florida, Fort Myers Division, Case No. 2:15-cr-3-FtM-29CM. On January 30, 2017, the Court sentenced Mr. Ihm to a term of 140 months imprisonment, to be followed by three years of supervised release. *see* Id. Absent any relief requested herein, Mr. Ihm's release date is January 3, 2025.

While in custody, Mr. Ihm has been nothing short of an exemplary inmate. From March 2017 through December 20, 2018, Mr. Ihm completed 625 days of classes and Productive Activities ("PA's"), worked as a clerk at Federal Prison Industries - UNICOR, achieved the ASQ Certified Quality Improvement Associate, and SAP Enterprise Software Certification in multiple business disciplines. *see* EXH C From December 21, 2018, the date the FSA was officially enacted, to December 31, 2022, Mr. Ihm earned 734 days of FSA ETC's moving his home confinement eligibility date to December 31, 2022. By the filing of this petition, Mr. Ihm has earned 742 days of ETC's - beyond the date the Bureau was required to transfer Mr. Ihm according to 18 U.S.C. § 3632(d)(4)(C) and 18 U.S.C. § 3624(g).

## B. The First Step Act of 2018

The FSA, 18 U.S.C. § 3532, was enacted into law on December 21, 2018. Congress directed the Bureau to

3

develop a system to asses each inmates risk and needs. 18 U.S.C. § 3632(a). That risk and needs assessment tool was required to be completed no later than July 19, 2019. Id. The Bureau met this deadline by announcing the development of its "Prisoner Assessment Tool Targeting Estimated Risks and Needs" ("PATTERN") tool on July 19, 2019. See Press Release 19-784, USDOJ Announces the Release of 3,100 Inmates Under the First Step Act, Publishes Risk and Needs Assessment System Available at https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and (last checked May 14, 2021)

Congress further directed the Bureau to apply this PATTERN assessment tool to determine each inmate's needs for programming appropriate to him. 18 U.S.C. § 3632(a)(3). This step was required to be completed 180 days after the creation of the PATTERN tool, or by January 15, 2020.

Congress created in the FSA a system of "time credits" to encourage inmates to participate in the particular programming needed by them as indicated by their PATTERN assessment. 18 U.S.C. § 3632(d). Under the FSA, ETC's may be earned by eligible prisoners who successfully complete the right type of programming or productive activities. 18 U.S.C. § 3632(d)(4)(A). Earned Time Credits for the right kind of programming are awarded at the rate of "10 days of time

credits for every day of successful participation in Evidence Based Recidivism Reduction ("EBRR's") programs or PA's. 18 U.S.C. § 3632(d)(4)(A)(i). An inmate who is "determined by the Bureau to be at a minimum or low risk of recidivating, who over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in EBRR's or PA's." 18 U.S.C. § 3632(d)(4)(A)(ii).

Furthermore, 18 U.S.C. § 3632 (d)(4)(C) provides that ETC's earned by inmates who successfully partic-ipate in recidivism reduction programs or productive activities "**shall** be applied toward time in pre-release custody or supervised release." Id. (emphasis added) the Director of the Bureau "**shall** transfer eligible prisoners, as determined under Section 3624(g), into prerelease custody or supervised release." Id (emphasis added). In other words, Congress directed the Bureau to apply these credits and transfer eligible inmates to pre-release custody or supervised release - it is NOT discretionary, but mandatory for eligible inmates.

Under 18 U.S.C. § 3621 (h)(2), the FSA directs the Bureau to phase-in the entire program for all prisoners, with the phase-in period ending January 15, 2022. Id. Accordingly, January 15, 2022 was the end of the phase-in period for

all prisoners, meaning it was the outer limit on when the Bureau must have calculated and applied ETC's for all prisoners, including Mr. Ihm. 18 U.S.C. § 3621 (h)(2); see Goodman v. Ortiz, No. CV 20-7582 (RMB), 2020 WL 5015613, at *5, *6 (D. NJ. Aug. 25, 2020) ("the Court finds no evidence in the statutory framework for delaying application of incentives earned by all prisoners during the phase-in program until January 15, 2022, the final date when Bureau must complete the phase-in with respect to 'all prisoners'"); see Funches v. Joseph, No. 3:21 CV 884/LAC/EMT, 2021 WL 6197966, at *2 (N.D. Fla. Dec. 9, 2021), report and recommendation adopted, No. 3:21 CV 884/LAC/EMT, 2021 WL 6197097 (N.D. Fla. Dec. 30, 2021) ("Thus, under the FSA, the BOP has until January 2022 to "phase-in" implementation of the time credit program (...) thus, the BOP is not required to calculate or apply time credits for participation in evidence based-recidivism-reduction programming until January 15, 2022."); Herring v. Joseph, No. 4:20 cv 249/TKW/HTC, 2020 WL 3642706, at *1 (N.D. Fla. July 6, 2020) (same). It has been a year since the phase-in ended. Mr. Ihm has not had his ETC's calculated nor applied.

On January 13, 2022 the Department of Justice announced that a new rule had been submitted to the Federal Register implementing the ETC's program required by the FSA. As part of the implementation process, the Bureau began transferring eligible inmates

out of Bureau facilities and into either supervised release program, Residential Reentry Centers ("RRC's") or Home Confinement ("H.C."). *see* Press Release 22-30, Justice Department Announces New Rule Implementing Federal Time Credits Program Established by the First Step Act, available at: https://www.justice.gov/opa/pr/justice-department-announces-new-rule-implementing-federal-time-credits-program-established (last updated January 13, 2022); *see* final rule at: https://federalregister.gov/documents/2022/19/2022-00918/fsa-time-credits.

Under the Justice Department's new rules, if the inmate is sentenced to a term of imprisonment under the U.S. Code, the FSA Time Credits may be applied to pre-release custody or supervised release if several conditions are met. *see* §523.44 Application of FSA Time Credits, available at: https://www.federalregister.gov/d/2022-00918/p-89.[1]  The Bureau will apply FSA ETC's toward <u>prerelease custody</u> when an eligible inmate has maintained a minimum or low recidivism risk through his or her last two risk and needs assessments. *see* §523.44(3)(c). The Bureau will apply FSA ETC's toward <u>early transfer to supervised release</u> under 18 U.S.C. §3624(g) when an eligible inmate has: (1) maintained a minimum or low recidivism risk through his or her last risk and needs assessment; (2) a term of supervised release after imprisonment included as part of his or her sentence, as imposed by the sentencing court; and (3) the application of FSA ETC's would result

in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred. see § 523.44(3)(d).

At the time of drafting this petition, there is no federal statutory limit on the duration of time an inmate may spend on prerelease custody or Home Confinement.

## C. DETAINER LODGED AGAINST MR. IHM

On February 17, 2017, Collier County Sheriff's Office lodged a detainer against Mr. Ihm for violating state probation when he was indicted under his instant federal case.

During Mr. Ihm's initial Program Review at FCI-Miami in early 2017, his Case Manager and Counselor advised him of the lodged detainer and encouraged Mr. Ihm to resolve it as soon as possible - so that he would be eligible for certain programs - and transfer to the Miami Camp, located next door. Despite the detainer and Bureau policy, Mr. Ihm was transferred to the Camp in March 2018.

Mr. Ihm filed multiple unsuccessful petitions in the Circuit Court for Collier County, Florida attempting to reslove the violation, and thus, remove the detainer. Finally, on November 4, 2019, the Circuit Judge granted "Motion to Transport

Defendant" and ordered C.C.S.O. to transport Mr. Ihm with all due speed. After two years of Court closures due to the COVID-19 pandemic, Mr. Ihm re-filed his "Motion to Transport Defendant." On July 11, 2022, the Honorable Circuit Judge Elizabeth V. Krier granted the motion, ordering CCSO. to transport Mr. Ihm to resolve the pending issues. see EXH D.

Here, it is clear the Court is inclined to resolve the violation of probation, thereby clearing the detainer. Otherwise, the Court would have denied the motion, kept the detainer in place, and take custody of Mr. Ihm at the end of his federal incarceration.

Despite the Judge's Order, C.C.S.O. has not taken Mr. Ihm into custody. The Unit Staff refuses to communicate with the State, although acknowledges that a "phone call or two" might resolve the lack of communication.

At each of Mr. Ihm's Program Reviews since the inception of the PATTERN tool, his Individualized Needs Plan-Program Review gave Mr. Ihm a "LOW" risk of recidivism and described his "Current FSA Assignment" as "FTC-Eligible-reviewed on 4-28-2020." see EXH E. It was not until Mr. Ihm filed his Informal Resolution, or BP-8, and received a response, was he made aware of the Bureau's refusal to calculate and apply FSA ETC's because Mr. Ihm "have a detainer,"

The Bureau's emphatic position in various Federal District Court filings look to its Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure page 10 it states in part: "Inmates in the following categories shall not ordinarily participate in CCC programs:

f. Inmates with unresolved pending charges or detainers." Here, the Bureau wittingly omits the remainder of the sentence: "which will likely lead to arrest, conviction, or confinement." see EX H F. The Bureau and FCI-Miami neglect to investigate whether the detainer will, in fact, result in those conditions.

The Bureau has been unmoving when applying Program Statement 7310.04 in its arguments in Federal Courts, posturing "because the BOP is entitled to interpret the FSA to allow it to deny application of earned ETC's to those federal inmates who have pending criminal charges or a detainer." Jones v. Engleman, Case No. 2:22-cv-05292, 2022 U.S. Dist LEXIS 185635 (C D Cal., Sept. 7, 2022). This position includes Mr. Ihm.

"The magistrates recommended decision rejected the Bureau's position holding that it is fundamental that a statute's words generally should be interpreted as taking their ordinary, contemporary, common meaning at the time

Congress enacted the statute. Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always give effect to the unambiguously expressed intent of Congress." Id.

Here the Magistrate Judge ruled "there are no such interstices, because the relevant portions of the FSA are not ambiguous or incomplete and Congress's intent is clearly expressed through mandatory language. The FSA's language shows that Congress consciously chose to do three things. One, by its use of the "shall be applied" and "shall transfer" language in Section 3632(d)(4)(C), Congress made the application of Earned Time Credits to effect early release mandatory for prisoners 'eligible' under Section 3624(g). Two, by Section 3624(g), Congress spelled out prerequisites for a prisoner to be eligible ... and do not contemplate any additional criteria or pre-condition to release akin to the Pending Charges Exclusion. Third, by Section 3632(d)(4)(c), Congress explicitly determined which prisoners are 'ineligible' to have FSA ETC's and early release provisions applied to them, and none of these expressly delineated categories include prisoners who have pending charges or detainers." Id. Furthermore, "the First Step Act's list of prisoners 'ineligible' for ETC's left no room for the BOP to add other charges." (emphasis added) *Moody v. Gubbiotti;* Case No. 21-12004 2022,

11

U.S. Dist LEXIS 18399 (D. N.J., Oct. 3, 2022).

Mr. Ihm, through and through, meets all of the statutory criteria set forth in the FSA Sections 3632 (d)(4)(c) and 3624(g), the Bureau does not get to ignore Congress's intent and does not get to add its own language. Shall is mandatory, and the Bureau should have anticipated Mr. Ihm's projected release date and notified the detaining agency in September, 2022. "The word "shall", in a statute, indicates a command; what follows the word 'shall' is 'mandatory', not precatory." (quoting Mach Mining LLC. v. Equal Employment Opportunity Commission, 575 U.S. 480, 486, 135 S.Ct. 1645, 191 L.Ed.2d 607 (2015)). [3]

Here, through its unheeding interpretation and its own additions to the FSA, the Bureau refuses to calculate and apply the well earned and deserved ETC's to Mr. Ihm, remaining blind to Congress' intent to incentivise and reward deserving and eligible prisoners.

## II. ARGUMENT AND RELIEF REQUESTED

A. Mr. Ihm is Eligible to Have the ETC's Applied to his Sentence and to be Transferred to Home Confinement [4]

Mr. Ihm is eligible under the FSA to receive the ETC's and to have these ETC's applied to his sentence without further

delay.

Mr. Ihm is eligible to have his ETC's applied to pre-release custody because he was sentenced to a term of imprisonment under the U.S. Code, specifically under Sections 18 U.S.C. 1343 and 18 U.S.C. 1028A. Mr. Ihm's sentence, as imposed by the sentencing court, included a term of supervised release after imprisonment. see EXH. B

Mr. Ihm had his first Individualized Reentry Plan-Program Review after PATTERN system was implemented on 12/8/2021 see EXH G

Mr. Ihm was assigned various EBRR's and PA's through his case Manager. see Id. According to programming protocol, Mr. Ihm met with his Case Manager every six months, including the following dates: January 13, 2021; June 23, 2021; December 8, 2021, April 22, 2022, and October 7, 2022.

At each of these meetings he is to be assigned pro-gramming and Productive Activities. He is then provided a copy of the assessment called "Individualized Re-entry Program Review." see Id. This assessment includes a list of assignments, education courses, drug treatment assignments, assigned progress review, goals for the next program review, long term goals, and various other topics such as disciplinary history. see Id. Mr. Ihm successfully participated and continues to participate in this programming. see Id. Furthermore, Mr. Ihm has main-

3

tained a minimum or low risk through two consecutive risk and needs assessments, satisfying the requirements of 18 U.S.C. §§ 3632 (a)(1) and (d)(4)(A), entitling him to 15 days of time credits for every 30 days completed under the FSA. see EXH H.

As of December 31, 2022, Mr. Ihm has accrued 734 days of Earned Time Credits. Under the FSA § 3632(3) Supervised Release, the Director of the Bureau may transfer a prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under § 3632. Applying the first 365 days of ETC's to Mr. Ihm's eligibility for transfer to supervised release under the FSA § 3632 would move Mr. Ihm's current release date up to January 3, 2024. Applying the remaining 369 days of additional ETC's would move Mr. Ihm's Home Confinement date up to December 31, 2022, a date which has already passed.

To ensure Mr. Ihm receives the full benefit of the incentives that he earned under the FSA through diligent work, he should be immediately eligible for transfer to Home Confinement.

While this petition is pending, Mr. Ihm continues to participate in programming, productive activities and work placements under the FSA and is on track to earn an additional

14

14

15 days of ETC's by January 31, 2023. These additional ETC's should be deducted from the end of Mr. Ihm's term of supervised release.

## B. Mr. Ihm has Exhausted Administrative Remedies

Mr. Ihm has Exhausted Administrative Remedies according to the Bureau's process as required for seeking relief under 28 U.S.C. § 2241. see Santiago-Lugo v. Warden, 785 F.3d. 467, 474-75 (11th Cir. 2015). On August 28, 2022 Mr. Ihm filed an informal complaint, otherwise known as a BP-8 form with the FPC-Miami Unit Staff requesting the calculation of all ETC's earned since the inception of the FSA on December 21, 2018, and for those credits to be applied to his sentence so he would be eligible for Home Confinement. On September 20, 2022, Mr. Ihm presented his BP-9, otherwise known as "Request For Administrative Remedy", to Unit Staff. An agreement was made between Mr. Ihm and his Counselor that the BP-8 needed the Unit Managers signature and that once signed the Counselor would attach it to the BP-9 and forward it to the Wardens Office. see EXH I  On October 12, 2022 Mr. Ihm received a rejection; a "Rejection Notice" from the Warden's Office claiming "You did not attempt informal resolution prior to submission of "ADMINISTRATIVE REMEDY." It wasn't until September 28,

2022, a full month after submitting his BP-8, did he see his Counselor and receive the signed BP-8 (it was not signed and attached to the BP-9 on September 20, 2022 as agreed.) The informal resolution informed Mr. Ihm that the Bureau and FCI-Miami would not calculate and apply FSA ETC's due to the "detainer" lodged against him. This was the first Mr. Ihm learned of the Bureau's position on FSA ETC's and detainers.

On October 14, 2022, Mr. Ihm finally attached the signed BP-8, attached it to the BP-9, and re-submitted it to the Warden's Office through the Unit Manager. EXH J.

On October 20, 2022, the Warden's Office denied Mr. Ihm's request to have his FSA ETC's calculated and applied for three reasons. First, "a review of this matter reveals you are Ineligible for the FSA due to your current detainer." Two, "regarding Home Confinement under the CARES Act and following guidance from the Attorney General the following factors should be assessed for suitability for Home Confinement: - the inmate does NOT have a current detainer." And three, "Furthermore, it should be noted that <u>your eligibility or ineligibility is not determined at the institution level, it is decided at the <b>NATIONAL</b> level where your case is reviewed by <b>specialized staff</b></u> who then submit your eligibility status into SENTRY for staff to access at the local level." (emphasis added) see EXH J.2

16

On October 23, 2022, Mr. Ihm appealed the denial by the Warden's Office by submitting a BP-10 or Regional Administrative Remedy Appeal by placing a postage paid envelope, with one copy of the Warden's Office denial, in the prison mail depository. see EXH K, & J₁

While Mr. Ihm continued to follow the administrative remedy process, logic tells that sending an Appeal to the Region would be useless; in the Warden's words "eligibility or ineligibility is not determined at the institution level, it is decided at the **NATIONAL** level ... by specialized staff." The Supreme Court recognizes "where the administrative body has shown to be biased or has otherwise **predetermined** the issue before it." *McCarthy v. Madigan*, 503 U.S. 146-148, 112 S.Ct. 1081, 117 L.Ed. 2d 291 (1992). Nevertheless, Mr. Ihm filed his BP-10 on October 23, 2022.

Mr. Ihm did not receive a Response to the Regional Appeal. In fact, Mr. Ihm did not receive a Notification of time extension from the Region. "Once filed, response **shall** be made (...) by the Regional Director within 30 calendar days (...) If the period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended by (...) 30 days at the Regional level (...) Staff **shall** respond in writing to all filed Requests and Appeals." see Federal Bureau of Prisons Program Statement 1330.18,

7

28 C.F.R. §542.18-19 Response Time.

Here, Mr. Ihm did not receive a written Notice for extension nor a written Response to his Regional Appeal filed on October 23, 2022. Mr. Ihm added six days for mailing (3 each way), 30 days for written response and 30 days for notice of extension, totaling 66 days in which the Regional Director was required under its Program Statement to respond to Mr. Ihm.    "Although the prisoner mailbox rule concerns filings before the court rather than requests to the Warden [or Region], I find that the rationale is appropriately applied in this situation. Inmates are not typically handed the keys to the Warden's office so they can place their applications ... on the Warden's desk." U.S. v Resnick, 451 F. Supp. 3d. 262, 2020 U.S. Dist. LEXIS 59091, 2022 WL 1651508 at *6 (S.D.N.Y., Apr. 2, 2020). Instead, the prisoners must rely on the prison authorities, whom they cannot control. Therefore, following the same logic as the prisoner mailbox rule, I find the date the Defendant's request was conveyed to the BOP ... should be the date from which the 30 day time period is measured." see United States v. Feucht, 462 F. Supp. 3d 1399 (11th Cir., May 27, 2020).

On December 29, 2022, Mr. Ihm considered his BP-10 denied. "If the inmate does not receive a response within the time allotted for reply, including extension, the

18

inmate may consider the absence of a response to be a denial at that level." §542.18. He then filed his Appeal to the General Counsel. This is called a BP-11, or Central Office Administrative Remedy Appeal. see EXH L, K & J₁.

Due to the seriousness of Mr. Ihm's Appeal; fighting to have his FSA ETC's calculated and applied, he was diligent in adhering to the Administrative Remedy process and requirement for filing this instant §2241 petition. In an effort to track the status of this Administrative Remedy, Mr. Ihm requested a copy of his Administrative Remedy Index (a tracking system used by the Bureau to track all Administrative Remedies.)[5] see EXH. M As of the filing of this petition Mr. Ihm has not received a response to numerous requests to FCI Warden or Administrative Remedy Coordinator.

Mr. Ihm considers the BP-11 Appeal sufficient to exhaust his administrative remedy process. "Appeal to the General Counsel is the final administrative appeal (...) in many cases, courts require a proper appeal to the General Counsel before an inmate may pursue the complaint in Court." Federal Bureau of Prisons Program Statement 1330.18 Section 9(a).

Since the decision is "decided at the **National** level where your case is reviewed by specialized staff" to refuse

calculating and applying FSA ETC's to Mr. Ihm, it is clear that the Bureau's position is permanent. Again, Mr. Ihm looks to *McCarthy*, "where the administrative body has shown to be biased or otherwise **predetermined** the issue before it." see *McCarthy v. Madigan*. Still, Mr. Ihm filed his final appeal.

More than a year ago, on January 15, 2022, the FSA ordered the Bureau to have calculated and applied earned time credits for **all** eligible prisoners, including Mr. Ihm. The Bureau does not have the authority to ignore this directive, nor does it have the authority to add its own conditions to the statute, making inmates with detainers ineligible to earn Time Credits and apply them under the First Step Act. The Bureau refuses to calculate and apply Mr. Ihm's ETC's under the FSA.

## III. CONCLUSION

Congress created in the FSA time credits system to encourage prisoners to participate in recidivism reduction programming and productive activities in consideration for earning Time Credits towards pre-release custody or supervised release. 18 U.S.C. § 3624. Mr. Ihm actively and successfully participated in First Step Act PATTERN programming earning more than 742 days of Earned Time Credits. In exchange, the FSA directed the Bureau

10

to implement the FSA and have completed the phase-in for the entire program for all prisoners by January 15, 2022. However, the Respondents have not met that directive and have failed to calculate Mr. Ihm's earned Time Credits and apply them to his sentence for early transfer to pre-release custody or supervised release.

WHEREFORE, Petitioner, Jeffrey Ihm, respectfully requests this Honorable Court order Respondent to immediately calculate Mr. Ihm's Earned Time Credits and apply them to his sentence, moving the end of Mr. Ihm's sentence to December 31, 2022, and for immediate placement into Home Confinement, and to notify Collier County, the detaining agency of his immediate pending release, and for such relief to be completed in 14 days instead of the 90 days described in the Bureau's Program Statement considering the Bureau should have anticipated the Petitioner would prevail in this instant case.[6]

PROCEED TO FOLLOWING PAGES FOR MR. JEFFREY IHM'S DECLARATION

21

# FOOTNOTES

1. As previously noted, 18 USC § 3632(d)(4)(C) provides that "Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities **shall** be applied toward time in prerelease custody or supervised release." Id (emphasis added). Further, the Director of the BOP "**shall** transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." Id (emphasis added). In the Department of Justice's final rule, "[t]he Bureau assures commenters that FSA Time Credits will be applied to early transfer to supervised release, as authorized by the FSA in 18 USC § 3632(d)(4)(C) and 18 USC § 3624(g)." https://federal register.gov/d/2022-00918/p-103.

2. The State Circuit Court twice granted the "Motion to Transport Defendant." and most recently Honorable Judge Elizabeth V. Krier Ordered the Collier County Sheriff to "take into custody and transport the named Defendant herein, from the Federal Correctional Institution, 15801 S.W. 137th Ave, Miami, FL 33177, to the Collier County Jail, and further ordered and Adjudged, that upon resolution of the said other charges now requiring the presence of the Defendant herein described, that the Sheriff of Collier County, or one of their duly authorized deputies shall transport the said defendant back to the Federal Correctional Institute, with all due speed and appropriate authority." Despite the Orders, Mr. Ihm has remained in Bureau custody.

3. In accordance with the Bureau's Program Statement 5800.15 §606, PRE RELEASE NOTIFICATION, FCI-Miami should have sent a notification "no later than 90 days before the inmates release date, the CS Staff will notify the agency that placed a detainer or notification, usually via DAL [Detainer Action Letter] or letter, of the inmates projected release date. The authority that filed a detainer must notify the institution of its intent to take custody of the inmate. It is the responsibility of the agency placing the detainer to arrange with local law enforcement authorities."
The Circuit Judge put the CCSO on notice through its Order to transport Defendant. " If the requesting authority indicates in writing it will not take custody of the inmate, a DAL will be completed and forwarded, the detainer will be removed, the warrant will be returned, and the institution may continue with release planning. id.

# FOOTNOTES (CONTINUED)

4. Mr. Ihm's declaration is included as a seperate page at the end of this document. As set forth in his declaration, Mr. Ihm declares that the facts contained herein are true and correct to the best of his knowledge.

5. "The BOP maintains a database known as the Sentry Inmate Management System ("SENTRY"). In the ordinary course of business computerized indexes of all formal Administrative Remedies filed by inmates are maintained by the Institutional, Regional, and Central Offices. SENTRY generates a report titled 'Administrative Remedy Generalized Retrieval' which allows codes to be entered to identify the reason or reasons for rejecting a request for administrative relief." Federal Bureau of Prisons Program Statement 1330.18 Section 14.

6. "Although Respondent has not had the benefit of this Court's ruling, Respondent should have anticipated the possibility of this Court granting habeas relief and begun preparations to calculate Petitioner's Time Credits and notify the Commonwealth of Pennsylvania of Petitioner's potential early release. therefore, rather than giving Respondent the typical full 90-day period to notify the Commonwealth of Pennsylvania of Petitioner's impending release, this Court will reduce that period to 14 days. If the Commonwealth does not take custody by that date, the BOP shall release Petitioner to early supervised release within 14 days of the date of this Opinion and accompanying Order, assuming Petitioner has earned sufficient TC's for the maximum 12 month early supervised release period under §3632." *Moody v. Gubbiotti,* Case No. 21-12004 2022, U.S. Dist. LEXIS 18399 (D.N.J., Oct. 3, 2022) Here, the Honorable U.S. District Judge Bumb concluded that the Petitioner, who like Mr. Ihm, had a state detainer lodged against him: "the Court will grant the habeas petition in part and direct Respondent to calculate Petitioner's earned TC's under the FSA immediately, and provide an update to this Court within 7 days of the entry of this Order. If Petitioner has earned sufficient Time Credits, Respondent shall notify the Commonwealth of Petitioner's supervised release date of October 18, 2022. (...) Date: October 3, 2022." *Id.*

23

# DECLARATION OF JEFFREY IHM

I, Jeffrey Ihm, declare:

1. I am sui juris and have personal knowledge of the facts continued herein.

2. I am the Petitioner in the above-captioned action. I make this declaration in support of the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.

3. I HEREBY CERTIFY that the above statements and declarations, and exhibits contained herein are true and correct to the best of my knowledge, information and belief. I understand that any intentional misstatements of material facts contained in this document may cause adverse action under the pains of penalties, and perjury.

13ᵗʰ day of January, 2023

Jeffrey Ihm

Jeffrey Ihm
FPC-Miami
Miami, Florida

24